UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
MARTIN MISHTAKU,

Plaintiff,

-against-

PRESIDENTIAL LUXURY LIMOUSINES,
*et al.*,

Defendants.
-------------------------------------------------------- X

**REPORT AND
RECOMMENDATION**
23 CV 1501 (OEM) (CLP)

**POLLAK**, United States Magistrate Judge:

On February 26, 2023, plaintiff Martin Mishtaku commenced this action against defendants Presidential Luxury Limousines Inc. and David Yahodah, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law ("NYLL") §§ 190 and 650, *et seq.*, seeking a declaration that he was defendants' employee, and seeking damages for unpaid minimum and overtime compensation under the FLSA and NYLL, unpaid spread of hours premiums, unpaid commissions/gratuities, reimbursement of unlawful wage deductions, and compensation for not receiving wage notices and statements under the NYLL, as well as maximum liquidated damages, attorney's fees and costs, and prejudgment interest on his state law claims. (Compl.[1] ¶¶ 1-3, 76-82).

Currently pending before this Court on referral from the Honorable Orelia E. Merchant is the plaintiff's motion for default judgment (ECF No. 14). For the reasons set forth below, it is respectfully recommended that a default judgment be entered against defendants Presidential Limousines and David Yahodah and that plaintiff be awarded $120,594.06 in damages and $10,955.00 in attorney's fees and costs.

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed February 26, 2023 (ECF No. 1).

FACTUAL AND PROCEDURAL HISTORY

Plaintiff alleges that defendant Presidential Luxury Limousines Inc. ("Presidential Limousines") is a New York corporation, with a place of business located at 50-19 49th Street, Woodside, NY, 11377. (Compl. ¶¶ 8, 11). Plaintiff alleges that Luxury Limousines Inc. was at all relevant times an enterprise engaged in commerce within the meaning of the FLSA and had an annual revenue of at least $500,000. (Id. ¶¶ 39, 56-58).

Plaintiff alleges that defendant David Yahodah was the owner of the corporate defendant and exercised control over the terms and conditions of plaintiff's employment, including the power to hire and fire employees, to determine their wage rates and work schedule, and to supervise and control the plaintiff's employment. (Id. ¶¶ 9, 10, 17).

According to the Complaint, plaintiff Martin Mishtaku was employed by Luxury Limousines Inc. as a driver and chauffeur from November 2, 2017, through November 27, 2022. (Id. ¶¶ 15, 27). Plaintiff did not work for the period from around March 2020 to September 2021 due to the COVID 19 pandemic. (Mishtaku Decl.[2] ¶ 5). Plaintiff "performed the manual and physical work of driving, opening and closing doors, and handling baggage throughout the workday." (Compl. ¶ 27). Plaintiff alleges that he was paid an hourly rate of $15.27[3] (id. ¶ 28), and worked approximately 86.28 hours per week.[4] (Mishtaku Decl. ¶ 7; Pl.'s Mem.[5] at 15). Plaintiff states that he was not paid any wages for the overtime hours worked each week and did not receive spread of hours wages. (Compl. ¶¶

---

[2] Citations to "Mishtaku Decl." refer to the Declaration of plaintiff Martin Mishtaku, dated August 22, 2023 (ECF No. 14-2).
[3] In his Complaint, plaintiff alleged that he was paid at an hourly rate of approximately $15.27. (Compl. ¶ 28). However, the Plaintiff's Declaration explains that the hourly rate should be $15.71 based on an average calculated from 11 pay sheets from 2018 that he was able to locate following the filing of the Complaint. (Mishtaku Decl. ¶ 7). For the purposes of this report and recommendation, the Court will use the lower rate set in the Complaint ($15.27) pursuant to Fed. R. Civ. P. 54(c).
[4] In his Complaint, plaintiff alleged that he worked 78-105 hours per week. (Compl. ¶ 29). Plaintiff's Declaration explains that these revised hours are based on his average weekly hours from 11 pay sheets from 2018. (Mishtaku Decl. ¶ 7). For the purposes of this report and recommendation, the Court will use the lower approximation provided in the Mishtaku Decl. (86.28 hours).
[5] Citations to "Pl.'s Mem." refer to Plaintiff's Memorandum of Law in Support of His Motion for A Default Judgment Against Defendants as to Liability and Damages, filed August 24, 2023 (ECF No. 14-1).

36, 38).  During his last week of work, plaintiff alleges he was not paid the minimum wage rate since he was paid no wages.  (Id. ¶ 37).

Plaintiff also alleges that the defendants had a policy of deducting from plaintiff's wages when an accident occurred in the course of his employment.  (Id. ¶ 33).  Additionally, plaintiff states that the defendants did not provide him with wage statements or notices, as is required by NYLL §§ 195(1), 195(3).  (Id. ¶¶ 34, 35).

The Complaint sets forth four causes of action: 1) a request for declaratory judgment that the plaintiff was an employee of the defendants under the Internal Revenue Code, specifically, the Federal Insurance Contributions Act ("FICA"), the FLSA, and the NYLL (Count 1); 2) a violation of the FLSA for failure to pay overtime wages and minimum wages (Count 2); 3) a violation of the NYLL §§ 650, *et seq.*, and relevant regulations, for failure to pay overtime wages, minimum wages, and spread of hours wages (Count 3); and 4) violations of NYLL §§ 190, *et seq.*, for failure to pay commissions and gratuities, for unlawful wage deductions, and for failure to provide wage statements and notices.  (Count 4).  Plaintiff also seeks maximum liquidated damages and attorney's costs and fees, as well as prejudgment interest for his state law claims.  (Compl. ¶¶ 61, 67, 75).

Following the filing of the Complaint on February 26, 2023, the summons and Complaint were served on defendant Presidential Limousines on March 7, 2023, and on defendant David Yahodah on March 23, 2023.  (ECF Nos. 6, 7). The plaintiff filed two motions for extension of time to file a joint letter and proposed case plan, which the District Court granted, allowing the defendants until June 5, 2023, to appear in the action.  (ECF Nos. 8, 9).

When the defendants failed to file an answer or otherwise respond within the required time period, the plaintiff requested a certificate of default.  (ECF No. 10).  On June 15, 2023, the Clerk of the Court entered a certificate of default as to both defendants.  (ECF No. 11).

On August 24, 2023, plaintiff moved for default judgment as to defendants Presidential Limousines and David Yahodah.  (ECF No. 14).  Accompanying the Notice of Motion and supporting Memorandum of Law is plaintiff's Declaration with the following exhibits: plaintiff's Complaint, time sheets that plaintiff was able to locate that were allegedly provided by defendants, and a letter from defendants confirming plaintiff's employment (ECF No. 14-2).  A Declaration by plaintiff's counsel was also submitted with the following exhibits: plaintiff's Complaint, the Clerk's entry of default, the New York Department of State Entity Information for the corporate defendant, time records detailing some of the hours expended by plaintiff's counsel, receipts for legal costs, and plaintiff's counsel's brief in the Second Circuit case, Guthrie v. Rainbow Fencing Inc., No. 23 CV 350, regarding standing for NYLL wage statement and notice claims (ECF No. 14-3).

On August 24, 2023, the motion for default judgment was served on defendants Presidential Limousines. and David Yahodah.  (ECF No. 15).  An inquest hearing was held on February 7, 2024.  Defendants have not responded to plaintiff's motion and did not appear at the inquest hearing.  (See Minute Entry dated February 7, 2024).

DISCUSSION

I.   Default Judgment

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."  Fed. R. Civ. P. 55(a).  Rule 55 sets forth a two-part procedure for entering a default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir.  1993); see also Seaford Ave. Corp. v. ION Ins. Co. Inc., No. 22 CV 3449, 2022 WL 17669438, at *2 (E.D.N.Y. Dec. 14, 2022).  The court clerk first enters a default by noting the defaulting party's failure to respond or appear.  Fed. R. Civ. P. 55(a).  Second, after the

4

Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b).

In determining whether a default judgment should be entered, the Second Circuit has cautioned that a default judgment is an "extreme sanction" that "must remain a weapon of last, rather than first, resort." Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981); see also Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 127 v. Frank Torrone & Sons, Inc., No. 14 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 2, 2018), adopting report and recommendation, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018). While the Second Circuit has recognized the pressure on district courts "to dispose of cases that … delay and clog [their] calendar[s]" due to the litigants' "disregard of the rules," the Court instructs district courts to "maintain a balance between clearing [their] calendar[s] and affording litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and "doubt[s] should be resolved in favor of the defaulting party." Id. Furthermore, "[Rule 55(b)] states that a judgment by default 'may' be entered under specified circumstances, not that it must." Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants on notice, see Fed. R. Civ. P. 54(c) (stating a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006)

(holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved—the more money involved, the less justification for entering the default judgment. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, the Court may consider "whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant." Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 62 (2d Cir. 1981)).

In this case, it is beyond dispute that the defendants are in default since they have failed to appear, despite being given extensions of time to appear, as explained supra, and they have failed to challenge the Court's entry of default or appear at the Inquest Hearing. Further, the amount of damages plaintiff seeks in this case is not large enough to give this Court pause. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default judgment and giving defendants an opportunity to contest the entry of default where plaintiff's request for damages ran "well into the millions of dollars" and plaintiff did not follow the procedure set out in Fed. R. Civ. P. Rule 55).

Despite the numerous opportunities afforded to defendants, they have failed to respond to the complaint, failed to oppose plaintiff's motion for a default judgment, and failed to challenge the Court's entry of a default. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (observing that "[the defendant's] default is crystal clear—it does not even oppose this motion"). Accordingly, there is no compelling reason to delay further.

II.    Plaintiff's Claims

When a defendant defaults, the defendant is deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages."  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; see also Vierling Commc'ns GMBH v. Stroyls, No. 09 CV 6654, 2011 WL 5854625, at *1 (S.D.N.Y.  Sept.  16, 2011), report and recommendation adopted, 2011 WL 5844158 (S.D.N.Y.  Nov. 21, 2011); Wong v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y.  1995) (explaining that "[a]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded").  The Court, however, must review the allegations in the complaint to determine if the elements of each claim have been adequately pleaded.  See Au Bon Pain Corp. v. Artec, Inc., 653 F.2d at 65; see also Archbold v. Tristate ATM, Inc., Nos. 11 CV 5796, 12 CV 847, 2012 WL 3887167, at *3 (E.D.N.Y. Sept. 7, 2012), report and recommendation adopted, (E.D.N.Y. Mar. 15, 2013); see also Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (explaining that "it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief"), report and recommendation adopted, id. at 150-52.

A.  Declaratory Judgment

The first issue is plaintiff's request for a declaration that plaintiff was an employee of the defendants.  The plaintiff alleges that starting in or just before August 2018, the defendants misclassified him as an "independent contractor," even though he was at all relevant times an employee.  (Mishtaku Decl. ¶ 10).  He now seeks a declaratory judgment that he was an employee of the defendants under the Internal Revenue Code, including the Federal Insurance Contributions Act ("FICA"), as well as under the definition of "employee" set out in the FLSA and NYLL.  (Compl. ¶¶ 52, 53).

The Internal Revenue Code ("IRC") imposes different requirements based on an individual's status as an employee or independent contractor. For example, FICA is a federal payroll tax levied specifically on employees and employers. See 26 U.S.C §§ 3101, 3111, 3121(b). Under the IRC and FICA, the definition of an employee includes, *inter alia*, "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." 26 U.S.C. § 3121(d)(2). Additionally, the FLSA and NYLL require a common law employee-employer relationship for defendants to be held liable for the overtime wages and minimum wages. Vasquez v. NS Luxury Limousine Serv., Ltd., No. 18 CV 10219, 2021 WL 1226567, at *4 (S.D.N.Y. Mar. 31, 2021).

The Second Circuit has applied the following multi-factor test to distinguish between independent contractors and employees: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." Id. at *4 (citing Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 67 (2d Cir. 2003), and Brock v. Superior Care, Inc., 840 F.2d 1054 (2d Cir. 1988)).

The first factor of the test is the amount of control held by the employer over the workers. This can be determined by analyzing the control that the employer has over the workers' working conditions, including their pay and responsibilities. See Brock v. Superior Care, Inc., 840 F.2d at 1058-59. In the present case, the plaintiff states that the defendants exercised control over the terms and conditions of his employment, including the power to determine his wage rates and work schedule. (Compl. ¶ 17). Plaintiff also alleges he was supervised throughout his workday, taking "directions and instructions from Defendants'

dispatchers as to all aspects of his job." (Id. ¶ 21). Plaintiff alleges that he had to comply with defendants' delivery instructions and deadlines, dress code, and other rules and procedures as described in a provided manual. (Id. ¶¶ 21-23).

The second factor is the employee's investment in the business and his opportunity for profit or loss. Regarding investment, "[t]he more tools that an individual provides or owns himself, the more likely he will be considered an independent contractor." See Leach v. Kaykov, No. 07 CV 4060, 2011 WL 1240022, at *20 (E.D.N.Y. Mar. 30, 2011); see also Browning v. Ceva Freight, LLC, 885 F. Supp. 2d 590, 608 (E.D.N.Y. 2012) (holding that a "finding of independent contractor status" was supported because the drivers "utilized their own vehicles and all of their own tools and supplies"). According to the Complaint, the plaintiff did not invest substantially in his work. Defendants provided the plaintiff with tools and equipment necessary to perform his job, including the vehicle(s) he drove. (Compl. ¶ 25). The plaintiff also claims that he "was never in business for himself and was economically dependent for employment, work and wages on Defendants." (Id. ¶ 26).

The third factor is the degree of skill required to perform the work. The plaintiff worked as a driver/chauffeur. (Compl. ¶ 27). The duties of a chauffeur have been found to "require[] no specialized skill or initiative." See Gustafson v. Bell Atl. Corp., 171 F. Supp. 2d at 326.

The fourth factor of the test is the duration of the working relationship. The worker is more likely to be an independent contractor if they have "fixed employment periods and transfer from place to place." Baker v. Flint Eng'g & Const. Co., 137 F.3d 1436, 1442 (10th Cir.1998)). In contrast, the plaintiff had a durable relationship with his employer which lasted from November 2, 2017, to November 27, 2022, except for the period during COVID when plaintiff did not work at all. (Compl. ¶ 15; Mishtaku Decl. ¶ 5).

9

The last factor of the test is the extent to which the employees' work is a necessary part of the business.  The defendants are in the business of providing transportation services. (Compl. ¶ 13).  Drivers are an integral part of transportation services.  Saleem v. Corporate Transp. Group, Ltd., 52 F. Supp. 3d at 526 (holding "Defendants' business could not function without drivers, and Defendants wisely do not argue to the contrary").

Considering all the factors above, the Court finds that the plaintiff has sufficiently alleged that he was an employee of the defendants as defined by FICA, the FLSA, and NYLL.  Accordingly, it is respectfully recommended that plaintiff's motion for a declaratory judgment that he was an employee of defendants be granted.

B.  FLSA Claims

The second issue is whether defendants failed to pay the plaintiff the proper minimum and overtime wages due under the FLSA.  The FLSA requires a minimum wage of $7.25 an hour for the relevant time period.  29 U.S.C. § 206(a)(1)(C).  It also provides that "no employer shall employ any of his [covered] employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Overtime is calculated at a rate of one and one-half times the employee's regular hourly pay for work performed in excess of 40 hours per week. Id.

To establish a claim under the FLSA, a plaintiff must prove the following: 1) the defendant is an "[e]nterprise engaged in commerce or the production of goods for commerce;" 2) the plaintiff is an "employee" within the meaning of the FLSA; and 3) the employment relationship is not exempted from the FLSA.  See Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo

Found. v. Secretary of Lab., 471 U.S. 290, 295 (1985)); see also Rosenbaum v. Meir, No. 20 CV 4520, 2023 WL 2305960, at *4 (E.D.N.Y. Mar. 1, 2023).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . .  whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).  Plaintiff alleges that defendants utilized the instrumentalities of interstate commerce and "the goods, materials, and services through interstate commerce." (Compl. ¶¶ 41, 42).  Additionally, plaintiff alleges that the corporate defendants had an annual gross revenue of at least $500,000.  (Id. ¶¶ 39, 58).  In the context of this default, where defendants have elected not to challenge plaintiff's claims, the Court accepts these uncontested allegations as true.  Thus, the Court finds that the corporate defendants are an "enterprise engaged in commerce or in the production of goods for commerce."

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); Edwards v. Cmty. Enters., Inc., 251 F. Supp. 2d at 1098.  An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).  To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g).  The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 206(a).

The Complaint alleges that the plaintiff was employed by the defendants, who qualify as "employers" within the meaning of the FLSA. (See Compl. ¶ 56). As stated above, plaintiff was an employee and not an independent contractor. Therefore, plaintiff has sufficiently alleged that he is an "employee" under the FLSA. Based on the allegations in the Complaint, the Court finds that there is no basis for exempting the employment relationship at issue from the provisions of the FLSA.

Plaintiff's motion only claims damages under the FLSA for violations of the overtime provisions and for violations of the minimum wage requirements for his last week of work. (See Mishtaku Decl. ¶ 9; Pl.'s Mem. at 15-17). The Court must consider whether these claims were adequately pleaded.

"[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013). Plaintiff alleges in his Declaration that during the period of his employment, he worked approximately 86.28 hours per week, but that he was not paid a rate of at least 1.5 times the regular rate for overtime hours. (Mishtaku Decl. ¶¶ 7, 9). Specifically, plaintiff alleges that for some of these overtime hours, he was paid at his regular rate and that for others, he was not paid any wages. (Compl. ¶ 30). He provides an example of one week where he was paid at his regular rate for 85.26 work hours, and not paid any wages for 10 to 15 additional overtime hours worked. (Id.) However, "to simplify this motion" plaintiff is only requesting damages for overtime wages for which he was paid at his regular hourly rate. (Mishtaku Decl. ¶ 9). These allegations meet the specificity requirements set forth in Lundy.

The federal minimum wage was $7.25 an hour for the relevant time period. 29 U.S.C. § 206(a)(1)(C). Plaintiff alleges that during his last workweek he received no pay at all. (See Compl. ¶ 37). Plaintiff asserts that his last day was Sunday, November 27, 2022.

(Id. ¶ 15).  Plaintiff states that his average weekly number of hours (86.28) is also his approximation for his hours worked during his last week.  (Mishtaku Decl. ¶ 7; Pl.'s Mem. at 15).  Therefore, plaintiff has stated a minimum wage claim under the FLSA for his last week of work.

The statute of limitations under the FLSA is two years or three years where defendants' violations of the FLSA were willful.  29 U.S.C. § 255(a).  Plaintiff alleges that defendants' violations of the FLSA were willful.  (Compl. ¶¶ 36, 37).  Crediting plaintiff with a three-year statute of limitations, plaintiff's FLSA claims that accrued after February 26, 2020, are timely since the Complaint was filed on February 26, 2023.

C.  NYLL Claims

Plaintiff also alleges that defendants violated the NYLL.  Like the FLSA, the NYLL establishes certain minimum wage rates and mirrors the FLSA's requirement that employees be compensated at an overtime rate of one and one-half times their regular hourly pay for time worked in excess of 40 hours in a week.  See N.Y. Comp. Codes R. Regs. ("NYCRR") tit. 12, §§ 146-1.2, 146-1.4.

To recover under the NYLL, plaintiff must prove that he is an "employee" entitled to NYLL's protections and that the defendants are "employer[s]" as defined by the statute. See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407-09 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that the defendants achieve a certain minimum in annual sales made or business done in order to be subject to the law.  See NYLL § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer"). Similarly, an employee is simply defined, in part, as "any individual employed or permitted to work by an employer in any occupation."  NYLL § 651(5).  Therefore, the plaintiff fits within the definition of "employee" and defendants satisfy the definition of "employer" under

13

the NYLL.  Furthermore, there does not appear to be any exception to the definition of "employee" that applies in this case.  See NYLL § 651(5) (defining the exceptions).

Plaintiff's motion seeks damages under the NYLL for violations of the overtime provisions, for violations of the minimum wage for his last week of work, and for penalties for wage statement and wage notice claims.  (Pl.'s Mem. at 15-18).  The Court must consider whether these claims were adequately pleaded.

As stated above, plaintiff adequately alleges that defendants failed to pay overtime wages at the rate of one and one-half times the regular rate, which violates 12 NYCRR § 142-3.2.  Plaintiff also adequately alleges that he was not paid for his last week of work. Therefore, he was paid below the minimum wage rate set by NYLL, which was $15 per hour for the relevant time period.  See NYLL § 652; 12 NYCRR § 142-2.1.

Given the foregoing, the Court respectfully recommends that judgment be entered against defendants on plaintiff's NYLL overtime and minimum wage claims.  The statute of limitations for actions under the NYLL is six years.  NYLL § 663(3).  Since plaintiff's claims first arose in November 2017, the claims are timely because the Complaint was filed on February 26, 2023.

Plaintiff also contends that defendants did not provide him with sufficient wage statements as required by NYLL § 195(3), because the statements "did not contain all hours worked by plaintiff nor all wages earned, among other deficiencies," and that he was not provided with wage notices as required by NYLL § 195(1).  (Compl. ¶¶ 34, 35).  Under the NYLL's notice and wage statement provisions—known collectively as the "Wage Theft Prevention Act" or "WTPA"—employers are required to give each employee a notice of their rate of pay at the time of hiring and a wage statement listing specific information with each paycheck.  NYLL § 195(1)(a), (3).  The notice must contain the rate or rates of pay, whether the employee was to be paid by the hour, shift, day, or week, any allowances claimed as part

of the minimum wage, the regular pay day, the name of the employer, the physical address of the employer's main office, and the employer's telephone number in both English and the employee's primary language, if different from English.  Id. § 195(1)(a).  The wage statement must include "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions;" and certain allowances.  Id. § 195(3).

Although plaintiff alleges that he was never provided with notices or wage statements compliant with NYLL §§ 195(1) and 195(3), he has not alleged that he suffered any injury as a result of these violations.  The Supreme Court explained in TransUnion LLC v. Ramirez, 594 U.S. 413, 426 (2021), that the "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."  The Supreme Court clarified that "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."  Id. at 427.

Plaintiff argues that notwithstanding the decision in TransUnion LLC v. Ramirez, the Court may exercise supplemental jurisdiction over his WTPA claims without any showing of concrete injury, or alternatively, find that sufficient injury exists.  (Id. at 9-10). However, courts in this Circuit, applying TransUnion LLC v. Ramirez to the wage statement and wage notice provisions of the NYLL, have since required plaintiffs to identify the harm caused to them by these violations—i.e., to allege and ultimately prove that they suffered a specific injury as a result of defendants' noncompliance with the notice and wage statement provisions—and have concluded that a statutory violation alone is insufficient.  See Ramirez v. Union Constr. LLC, No. 22 CV 3342, 2023 WL 3570349, at *1 (S.D.N.Y. May 19, 2023) (declining to award statutory damages and dismissing NYLL wage statement and notice

claims on motion for default judgment due to lack of standing), <u>adopting report and recommendation</u>, <u>id.</u> at *1-5 (S.D.N.Y. Apr. 28, 2023); <u>but cf.</u> <u>Stih v. Rockaway Farmers Market, Inc.</u>, No. 22 CV 3228, 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023) (finding plaintiff pleaded a sufficient injury flowing from defendants' alleged violations of the NYLL wage statement and notice provisions where plaintiff alleged that the noncompliance "caused plaintiff to fail to realize that defendants were deducting certain benefits from his wages, resulting in his underpayment").

In the instant case, plaintiff merely alleged in his Complaint and Declaration that he was not provided with the requisite notice and wage statements.  (Compl. ¶¶ 34, 35; Mishtaku Decl. ¶¶ 19, 20).  He has not alleged any specific harm which flowed from defendants' noncompliance with the NYLL provisions, and therefore has not demonstrated his standing to bring these claims.  Accordingly, the Court respectfully recommends that default judgment be denied as to these claims.

III.   <u>Damages</u>

Having found that the defendants are liable for damages flowing from the FLSA and NYLL violations, the Court must determine whether the plaintiff has established his damages to a "'reasonable certainty.'"  <u>Gunawan v. Sake Sushi Rest.</u>, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting <u>Credit Lyonnais Sec (USA) Inc. v. Alcantara</u>, 183 F.3d 151, 155 (2d Cir.  1999)).  It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery.  <u>See</u> <u>Greyhound Exhibit group, In. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 159 (2d Cir. 1992).

While the defendants' failure to pay minimum and overtime wages violates both the FLSA and the NYLL, a plaintiff may only recover damages under one statute, as "double recovery of the same wages and related damages is not permitted."  <u>Gonzales v. Gran Israel Pre-Sch.</u>, No. 12 CV 6304, 2014 WL 1011070, at *11 (E.D.N.Y. Feb. 5, 2014), <u>report and</u>

recommendation adopted, id. at *1-2 (E.D.N.Y. Mar. 14, 2014).  Courts will thus award

damages under whichever statute would allow for greater recovery.  Id.[6]

A.  Plaintiff's Evidentiary Support for Damages

Plaintiff requests the following damages: $60,345 in unpaid overtime wages and an

equal amount in liquidated damages, $1,718.40 in unpaid wages for his last week of work and

an equal amount in liquidated damages, $10,000 in penalties for wage statement and notice

violations, $10,000 in legal fees, and $955 in costs.  (Pl.'s Mem. at 21).

Notably, plaintiff does not request damages for the claims regarding spread of hours

pay, commissions/gratuities, or wage deductions that he alleged in his Complaint;

accordingly, these claims are deemed abandoned and the Court does not recommend any

damages for these claims.  Plaintiff also does not request any prejudgment interest in his

motion, and so none has been recommended here.  Moreover, as explained supra, the Court

declines to recommend any damages for the wage notice and wage statement claims, based

on the failure to allege injury sufficient to confer standing.

Therefore, the Court must determine whether plaintiff's remaining overtime and

minimum wage damages have been proven to a reasonable certainty.  Gunawan v. Sake Sushi

Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).  In support of his request for damages, the

plaintiff has submitted a Declaration setting forth the basis for his claim for damages.

(Mishtaku Decl.).  In his Declaration, plaintiff states that he worked at Presidential

Limousines beginning on or about November 2, 2017, and ending on or around November

27, 2022.  (Id. ¶ 5).  He also states that due to the pandemic, he did not work from around

March 2020 to September 2021.  (Id. ¶ 5).  According to his Declaration, he worked an

average of 86.28 hours a week, calculated based on 11 informal time sheets from 2018 that

---

[6] Given that the NYLL has a longer statute of limitations than the FLSA and that the minimum wage rates under the NYLL were uniformly higher than the federal minimum wage rate of $7.25 in effect during the period of plaintiff's employment, the Court is recommending an award under the NYLL because it provides for a greater degree of recovery.

plaintiff alleges defendants provided to him and which are attached as Exhibit 2 to his

Declaration.  (Id. ¶ 7 (citing Ex. 2[7])).

Plaintiff asserts in his Complaint that he received an average hourly rate of $15.27.

(Compl. ¶ 28).  However, he alleges that throughout his employment, he was paid a straight

regular hourly rate for his overtime hours and was not paid any wages for his last workweek.

(Id. ¶¶ 36, 37).

B.   Presumption as to Hours Worked

As an initial matter, plaintiff's Declaration and submission as to his hours worked

and rates of pay received are a sufficient basis for this Court to recommend an award of

damages, even in the absence of further documentation.  Under the FLSA, an employee-

plaintiff generally "'has the burden of proving that he performed work for which he was not

properly compensated.'"  Santillan v. Henao, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011)

(quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)), report and

recommendation adopted, id. at 289-301.  The Supreme Court in Anderson v. Mt. Clemens

Pottery Co. noted, however, that "[e]mployees seldom keep . . . records [of hours worked]

themselves; even if they do, the records may be and frequently are untrustworthy."  328 U.S.

at 687, superseded by statute on other grounds.  By defaulting, defendants have "deprived the

plaintiff[s] of the necessary employee records required by the FLSA, thus hampering

plaintiff[s'] ability to prove [their] damages."  Santillan v. Henao, 822 F. Supp. 2d at 294.

"'[A]n employee has carried out his burden if he proves that he has in fact performed work

for which he was improperly compensated and if he produces sufficient evidence to show the

amount and extent of that work as a matter of just and reasonable inference.'"  Id. (quoting

Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687).

---

[7] Exhibit 2 to the Mishtaku Decl. is comprised of informal wage records from 2018.

In light of this holding, courts in this Circuit have held that where a defendant-employer defaults, a plaintiff may meet this burden of proof "by relying on his recollection alone." Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005). Otherwise, defendants in FLSA cases would stand to benefit from choosing not to cooperate with discovery or litigation efforts, and "[o]ne should not be permitted to profit by its own wrongful act." Boyke v. Superior Credit Corp., No. 01 CV 290, 2006 WL 3833544, at *5 (N.D.N.Y. Dec. 28, 2006) (citing 29 U.S.C. § 211(c), which requires that employers "make, keep, and preserve . . . records of the persons employed by him and of the wages, hours, and other conditions and practices of employment"); see also Park v. Seoul Broad. Sys. Co., No. 05 CV 8956, 2008 WL 619034, at *7 (S.D.N.Y. Mar. 6, 2008) (explaining that the Supreme Court has held that courts should apply a "special burden-shifting standard" where employers fail to comply with this statutory duty of record keeping) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687).

New York law also requires that employers keep various, detailed employment records. NYLL § 196-a(a) requires that employers who fail to maintain the appropriate records "bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." NYLL § 196-a(a); see also Padilla v. Manlapaz, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009) (explaining in the context of a summary judgment motion that where an employer's records are inadequate and the employee meets her burden of proof, "[t]he burden then shifts to the employer to prove by a preponderance of the evidence that plaintiff was properly paid for the hours worked") (citing NYLL § 196-a(a)). Additionally, employers are required to keep employment records in their course of business relating to employees' rates of pay, hours, dates of work, and payroll, among other information. See NYLL § 195(1) (requiring an employer to "provide his or her employees, in writing . . . a notice containing . . . the rate or rates of pay and basis thereof, whether paid by the hour,

shift, day, week, salary, piece, commission, or other"); NYLL § 195(2) (requiring employers to notify employees in writing of any changes in frequency or rate of payment seven days prior to the change taking effect); NYLL § 195(3) (employers must "furnish each employee with a statement with every payment of wages, listing . . . the dates of work . . . gross wages; deductions; allowances, if any claimed as part of the minimum wage; . . . and net wages"); NYLL § 195(4) (requiring employers to "establish, maintain and preserve for not less than six years contemporaneous, true, and accurate payroll records showing for each week worked the hours worked; the rate or rates of pay and basis thereof, . . . ; gross wages; deductions; . . . and net wages for each employee").

Thus, under both federal and state laws, defendant-employers have an obligation to keep records, and by virtue of defendants' default, plaintiff's "recollection and estimates of hours worked are presumed to be correct." Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004) (collecting cases), report and recommendation adopted, (S.D.N.Y. Feb. 26, 2004); see also Guallpa v. N.Y. Pro Signs, No. 11 CV 3133, 2014 WL 2200393, at *3 (S.D.N.Y. May 27, 2014), report and recommendation adopted, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014). Here, since defendants have chosen to default and have failed to present any evidence to dispute the number of hours allegedly worked by the plaintiff, the presumption as to plaintiff's claim of hours worked applies. Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 624 (S.D.N.Y. 1998), report and recommendation adopted, id. at 623; see also Reich v. Southern New Eng. Telecomm. Corp., 121 F.3d 58, 69 (2d Cir. 1997).

C.   Calculation of Minimum and Overtime Wages

1.   Unpaid Minimum and Overtime Wages for Plaintiff's Last Workweek

First, the Court must determine how much the plaintiff is entitled to recover from his last week of employment, including the unpaid minimum wages and overtime wages under

the NYLL.  Plaintiff states that during his last week of employment, he was not paid any

wages.  (Compl. ¶ 37; Pl.'s Mem. at 1).  He alleges that for his last workweek he worked for

approximately 86.28 hours (40 regular hours and 46.28 overtime hours).  (Pl.'s Mem. at 15).

Plaintiff's recollection of his hours is presumed to be correct.  Liu v. Jen Chu Fashion Corp.,

2004 WL 33412, at *3.  Furthermore, plaintiff's estimations are based on his timesheets from

2018.  (Mishtaku Decl., Ex. 2).

As of December 31, 2019, the minimum wage for hours worked in New York City

was $15.00 per hour.  NYLL § 652(1)(a)(i)-(ii).  Thus, during his last week, plaintiff should

have received at least $15.00 for his regular hours and at least $22.50 for his overtime hours.

However, plaintiff alleges that he is owed standard and overtime wages for his last

week based on his regular wage, alleged in the Complaint to be $15.27, instead of the

minimum wage of $15.00, since the NYLL provides for recovery of agreed-upon wages

under Article 6, Sections 191 and 198.  (Pl.'s Mem. at 16); see Calle v. Yoneles Enterprises,

Inc., No. 16 CV 1008, 2017 WL 6942652, at *7 (E.D.N.Y. Oct. 24, 2017), report and

recommendation adopted, 2018 WL 401269 (E.D.N.Y. Jan. 12, 2018) (holding that "[u]nder

the NYLL, however, a plaintiff can recover for unpaid 'straight' time at the agreed-upon rate,

even if it exceeds the minimum wage"); Cavalotti v. Daddyo's BBQ, Inc., No. 15 CV 6469,

2018 WL 5456654, at *13 (E.D.N.Y. Sept. 8, 2018) (noting that "[w]here a non-exempt

employee has an agreement with his or her employer to be paid at a rate greater than the

minimum wage, several courts have found that the failure to pay the promised rate is a

violation of NYLL § 191, entitling the employee to damages under NYLL § 198.").

However, plaintiff has not alleged that there was a specific "agreed-upon" or

"promised" amount that he would be paid.  According to plaintiff's timesheets attached as

Exhibit 2 to his declaration, his wages fluctuated, and the hourly rate provided in plaintiff's

Complaint ($15.27) is an approximation.[8]  (Mishtaku Decl., Ex. 2; Compl. ¶ 28).  Therefore, plaintiff has only alleged that he is owed minimum wages in an amount of $15.00 per hour for 40 hours and overtime wages in the amount of $22.50 per hour for 46.28 hours from his last workweek.  This totals to $600.00 in minimum wages and $1,041.30 in overtime wages owed for plaintiff's last week.

### 2.  Additional Unpaid Overtime

Plaintiff was also entitled to overtime payments at a rate of one and one-half times his regular hourly rate, for each hour worked over forty hours in any workweek.  NYCRR tit. 12, § 146-1.4.  However, plaintiff claims that he only received his regular hourly rate for hours worked over 40 in a week.[9]  (Mishtaku Decl. ¶ 9).  Thus, plaintiff is entitled to the additional half of his hourly rate for every hour worked over forty in a week.

Under the FLSA, a workweek is "a fixed and regularly recurring period of 168 hours– seven consecutive 24-hour periods."  29 C.F.R. § 778.105.  The NYLL uses the same definition.  See NYCRR tit. 12, § 146-3.11 (defining a "week of work" as "a fixed and regularly recurring period of 168 hours - 7 consecutive 24 hour periods").  Plaintiff contends that he worked approximately 86.28 hours per week (Mishtaku Decl. ¶ 7), and was paid an average of $15.27 per hour during his employment.  (Compl. ¶ 28).  Therefore, he should have received additional overtime pay of $7.635 per hour for the overtime worked.

Considering that in his Declaration the plaintiff states that he worked 167 weeks[10] (Mishtaku Decl. ¶ 5), and his last week was already calculated supra, his unpaid overtime is

---

[8] See discussion supra about the hourly rate.
[9] As noted supra, plaintiff also claims that he received no wages for about 10-15 overtime hours worked each week that were not reflected in his timesheets (Compl. ¶ 30), but "to simplify this motion" he is not requesting damages for such hours.  (Mishtaku Decl. ¶ 9).
[10] Plaintiff alleges that he worked from November 2, 2017, through November 27, 2022, except for 18 months (from March 2020 to September 2021) during Covid-19, and two to four weeks of time off each year. (Mishtaku Decl. ¶¶ 5,6).  This is consistent with the alleged 167 weeks worked.

calculated by multiplying 166 weeks, times 46.28 hours of overtime per week, times the

owed overtime compensation of $7.635 per hour, for a total of approximately $58,655.73.

    D.  Liquidated Damages Under the FLSA and NYLL

      In addition to compensatory damages, plaintiff seeks liquidated damages.  Liquidated

damages are available under both federal and state law.  See 29 U.S.C. § 216(b); NYLL §

663(1).

      Under the FLSA, an employer who fails to pay his or her employees the minimum

wage or overtime compensation required by Sections 206 and 207 is "liable to the . . .

employees affected in the amount of their unpaid minimum wages, or their unpaid overtime

compensation . . . and in an additional equal amount as liquidated damages," 29 U.S.C. §

216(b), unless the employer can demonstrate that he or she acted in good faith and had

reasonable grounds for believing that the act or omission in proper payment was not a

violation of the FLSA.  29 U.S.C. § 260.

      Similarly, under the NYLL, an employee is entitled to liquidated damages "equal to

one hundred percent of the total of such underpayments found to be due," unless the

employer proves a good faith basis for believing he or she was in compliance with the law.

NYLL § 663(1).  The burden of demonstrating good faith is on the employer.  Hengjin Sun v.

China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y.  Apr. 19, 2016)

(citing Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y.

2014)).  The employer's burden of proving good faith "'is a difficult one, with double

damages being the norm and single damages the exception.'"  Gortat v. Capala Bros., 949 F.

Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132,

142 (2d Cir. 1999)).  "While an award of duplicative liquidated damages under the FLSA and

NYLL . . . is prohibited, courts within this Circuit have allowed recovery under the statute

that provides the greatest relief."  De Jesus v. Sea Crest Diner-Rest., No. 17 CV 275, 2018

WL 3742778, at *10 (E.D.N.Y. May 7, 2018) (internal citation and footnote omitted) (citing Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018)), report and recommendation adopted, 2018 WL 6418893 (E.D.N.Y. Dec. 6, 2018).

Here, defendants have defaulted and therefore have not offered any evidence that their inadequate minimum wage and overtime payments were carried out with a good faith belief that their compensation practices were in compliance with either federal or state law. Thus, this Court finds defendants liable for the liquidated damages. Accordingly, it is respectfully recommended that the plaintiff be awarded liquidated damages under the NYLL[11] in the amount of $1,641.30 for his last week of work and $58,655.73 for additional overtime, totaling $60,297.03.

E.    Attorney's Fees and Costs

Plaintiff seeks to recover an award of reasonable attorney's fees and costs pursuant to applicable provisions of the FLSA and the NYLL. (See Pl.'s Mem. at 18-20; see also 29 U.S.C. § 216(b); NYLL § 663(1)). Courts in this Circuit determine the "presumptively reasonable fee" by multiplying the number of hours reasonably expended on litigation by an hourly rate that a reasonable, paying client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 189-90 (2d Cir. 2008); Jemine v. Dennis, 901 F. Supp. 2d 365, 391-92 (E.D.N.Y. 2012) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)) (collecting cases), report and recommendation adopted, id. at 370-72; Concrete Flotation Sys., Inc. v. Tadco Constr. Corp., No. 07 CV 319, 2010 WL 2539771, at *1-2 (E.D.N.Y. Mar. 15, 2010). In order to reach this number, "courts look to the 'rates prevailing in the community for similar services of lawyers of reasonably

---

[11] Given that this Court recommends an award of compensatory damages under the NYLL because it allows for a greater recovery in this context than the FLSA, see supra note 6, this Court also recommends an award of liquidated damages under the NYLL.

comparable skill, experience, and reputation.'" <u>Jemine v. Dennis</u>, 901 F. Supp. 2d at 392 (quoting <u>Cruz v. Local Union No. 3 of IBEW</u>, 34 F.3d 1148, 1159 (2d Cir. 1994)).

      Although courts retain broad discretion in awarding fees, <u>Peralta v. M & O Iron Works, Inc.</u>, No. 12 CV 3179, 2014 WL 988835, at *13 (E.D.N.Y.  Mar.  12, 2014), <u>report and recommendation adopted</u>, <u>id.</u> at *1, "[t]he Second Circuit has explained that the 'community' to which the district court should look is the district in which the district court sits." <u>Estrella v. P.R. Painting Corp.</u>, 596 F. Supp. 2d 723, 725 (E.D.N.Y. 2009) (citing <u>Arbor Hill Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d at 190).  Plaintiff bears the burden of proving the reasonableness of requested fees, "preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates." <u>Gunawan v. Sake Sushi Rest.</u>, 897 F. Supp. 2d at 94 (citing <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1147–48 (2d Cir. 1983)).  Additionally, among the "'critical ingredients in determining a reasonable hourly rate'" are the "'nature of representation and type of work involved in a case.'" <u>Jemine v. Dennis</u>, 901 F. Supp. 2d at 392 (internal quotation marks omitted) (quoting <u>Arbor Hill Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d at 184 n.2).  Courts in this Circuit are guided by: "(1) rates awarded in prior cases; (2) the court's own knowledge of prevailing rates in the district; and (3) evidence submitted by the parties." <u>Santillan v. Henao</u>, 822 F. Supp. 2d at 300 (citing <u>Farbotko v. Clinton Cnty.</u>, 433 F.3d 204, 209 (2d Cir. 2005)).

      In accordance with the requirements set out in <u>New York State Association for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136 (2d Cir. 1983), plaintiff's counsel has provided a detailed time record of the tasks performed in this case, along with corresponding fee rates based on the employee who performed the tasks.  (<u>See</u> Hassan Decl.,[12] Ex. 4[13]).

---

[12] Citations to "Hassan Decl." refer to the declaration by Abdul Karim Hassan, dated August 24, 2023 (ECF No. 14-3).

[13] Exhibit 4 to the Hassan Decl. consists of plaintiff's counsel's time records.

### 1. Hourly Rates

Plaintiff's counsel's billing records demonstrate that all work was performed by attorney Abdul K. Hassan.  (Id.)  Mr. Hassan has been a licensed attorney since 2001 and seeks a rate of $500 per hour.  (Hassan Decl. ¶¶ 16, 17).  Mr. Hassan has "litigated over 900 employment and wage cases in federal court here in the EDNY and SDNY since 2001" and has successfully litigated in front of the Second Circuit as well.  (Id. ¶¶ 17, 19).

Mr. Hassan's proposed rate of $500 an hour has been found reasonable in several recent cases in the Southern District.  See, e.g., Myers v. Life Alert Emergency Response, Inc., No. 23 CV 3609, 2024 WL 422057, at *2 (S.D.N.Y. Jan. 5, 2024), (recognizing that "Hassan's $500 per hour rate is reasonable"); Gumaneh v. Vilano Emp. Servs., Inc., No. 22 CV 774, 2023 WL 5715613, at *9 (S.D.N.Y. Sept. 5, 2023) (holding that a $500 per hour rate for Mr. Hassan was reasonable).  Furthermore, a $500 hourly rate for Mr. Hassan has been held to be reasonable in this District.  Quispe v. Stone & Tile Inc., 583 F. Supp. 3d 372, 381 (E.D.N.Y. 2022); (see also Hassan Decl. at 6-7 (stating that Mr. Hassan was awarded an hourly rate of $500 in Saravia v. Royal Guard Fence Co., Inc., No. 19 CV 2086)).

Therefore, this Court will calculate reasonable fees based on a rate of $500.00 per hour for Mr. Hassan.

### 2. Hours Expended

To determine the reasonableness of an attorney's fees request, "[t]he Court must make 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'"  Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994)), report and recommendation adopted, (S.D.N.Y. Aug. 9, 2012).  "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  Id.

(quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).  In this Circuit, judges are required to "'use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent. . . in a given case.'"  Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 208 (E.D.N.Y. Nov. 30, 2007) (quoting Fox Indus., Inc. v. Gurovich, No. 03 CV 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)).

As a preliminary matter, this Court finds that counsel's submission of time records sufficiently meets the Second Circuit's requirements, according to which "'all applications for attorney's fees [must] be supported by contemporaneous records.'"  Alejo v. Darna Rest., No. 09 CV 5436, 2010 WL 5249383, at *6 (S.D.N.Y. Dec. 17, 2010) (quoting Scott v. City of New York, 626 F.3d 130, 132 (2d Cir. 2010)), report and recommendation adopted as modified, 2011 WL 165413 (S.D.N.Y. Jan. 18, 2011); see New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at 1148 (holding that attorneys who apply for court-ordered compensation must document the application with "contemporaneous time records," which should specify, "for each attorney, the date, the hours expended, and the nature of the work done").

Generally, the "high-end amount of hours spent on eases [sic] in a similar procedural posture (i.e., a motion for default judgment immediately following the filing of a complaint) is no more than 55 hours total."  Maldonado v. La Nueva Rampa, Inc., 2012 WL 1669341, at *14 (collecting cases from the Second Circuit in which courts approved the number of hours spent on default judgment cases in similar "wage-and-hour cases" as requested if less than 55, and reduced the number of hours, if greater).

Mr. Hassan submitted records demonstrating that he has worked 26.27 hours on this matter.  (Hassan Decl., Ex. 4).  However, for his fee request, he reduced this number to 20 hours.  (Hassan Decl. ¶ 16).  The Court finds the 20 hours requested by plaintiff's counsel in this case to be reasonable.

3.  Calculation of Attorney's Fees

Given the foregoing analysis, Mr. Hassan's requested fee for this case, based on an hourly rate of $500 and 20 hours spent, is reasonable. This Court respectfully recommends that plaintiff be awarded attorney's fees in the amount of $10,000.

4.  Costs

Plaintiffs also requests $955.00 in litigation costs expended during the course of this litigation. (See Pl.'s Mem. at 20; Hassan Decl., Ex. 5). Provisions of both the FLSA and the NYLL provide that plaintiffs may recover reasonable costs. See 29 U.S.C. § 216(b); NYLL § 663(1). In this Circuit, "only those costs that are tied to 'identifiable, out-of-pocket disbursements' are recoverable." Jemine v. Dennis, 901 F. Supp. 2d at 394 (quoting Moon v. Gab Kwon, No. 99 CV 11810, 2002 WL 31512816, at *30-31 (S.D.N.Y. Nov. 8, 2002)). Here, the requested costs include the filing fee ($402) and the fees for service of process on the two defendants ($553). (Pl.'s Mem. at 20). Receipts have been provided for both costs. (Hassan Decl., Ex. 5). This Court generally approves requests that are reasonable and well-documented. See, e.g., Kalloo v. Unlimited Mech. Co. of NY, Inc., 977 F. Supp. 2d 209, 214 (E.D.N.Y. 2013).

The Court finds the requested costs for service and filing fees are reasonable, and respectfully recommends that plaintiff be awarded $955.00 in costs.

CONCLUSION

In summary, it is respectfully recommended that a default judgment be entered against defendants Presidential Limousines and David Yahodah and that plaintiff be awarded: 1) $60,297.03 representing unpaid minimum wages and overtime pay under the NYLL; 2) $60,297.03 in liquidated damages under the NYLL; and 3) $10,000 in attorney's fees and $955.00 in costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See, e.g.</u>, <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiffs are directed to promptly serve a copy of this Report and Recommendation on defendants and to provide the Court with proof of service.

**SO ORDERED**

Dated: Brooklyn, New York
        February 29, 2024                     /s/ Cheryl L. Pollak
                                              Cheryl L. Pollak
                                              United States Magistrate Judge
                                              Eastern District of New York